**UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS**

No. 04-0555

ALBERTO Q. PALOR, APPELLANT,

V.

R. JAMES NICHOLSON,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Decided   June 29, 2007   )

*Kathy A. Lieberman,* of Washington, D.C., for the appellant.

*Tim S. McClain,* General Counsel; *R. Randall Campbell*, Assistant General Counsel; *Brian B. Rippel*, Deputy Assistant General Counsel; and *John D. McNamee,* all of Washington, D.C., were on the brief for the appellee.

Before KASOLD, MOORMAN, and DAVIS, *Judges.*

MOORMAN, *Judge*, filed the opinion of the Court. KASOLD, *Judge*, filed an opinion concurring in judgment.

MOORMAN, *Judge*:  The represented appellant, Alberto Q. Palor, appeals a November 24, 2003, Board of Veterans' Appeals (Board) decision that denied his claim for entitlement to basic eligibility for VA benefits.  Record (R.) at 1-7.  On May 10, 2007, the Court issued a decision affirming the Board's decision.  On May 16, 2007, the United States Court of Appeals for the Federal Circuit (Federal Circuit) issued its decision in *Sanders v. Nicholson*, __ F.3d __, __, No. 06-7001, (Fed. Cir. 2007), addressing the application of the rule of prejudicial error in the context of allegations that VA failed to comply with its duty to notify pursuant to 38 U.S.C. § 5103(a).  On May 29, 2007, the appellant filed a motion for reconsideration in light of the Federal Circuit's decision in *Sanders*.  Accordingly, the Court will grant the appellant's motion,  withdraw the May 10, 2007, opinion, and issue this opinion in its stead.  This appeal is timely and the Court has jurisdiction pursuant to 38 U.S.C. §§ 7252(a) and 7266(a).  For the reasons set forth below, the Court will affirm the Board's November 2003 decision.

**I.  FACTS**

In March 2001, Mr. Palor filed an application seeking VA disability compensation for a peptic ulcer, a wound on the right foot, and a prostate condition. R. at 36. In support of his claims, Mr. Palor submitted notices and affidavits from the Republic of Philippines Department of National Defense Military Service Board, Department of National Defense Philippine Veterans Affairs Office, and friends regarding his military service and asserting that he had recognized guerrilla service in the Republic of the Philippines from January 1942 to November 1943. R. at 14, 18, 20-33, 36. In September 2001, VA requested verification of Mr. Palor's service from the National Personnel Records Center (NPRC).

In October 2001, VA sent Mr. Palor a letter regarding his claims for service connection. R. at 48. The letter informed Mr. Palor of the elements for establishing service connection: (1) "[A]n injury in military service or a disease that began in or was made worse during military service, or an event in service causing injury or disease;" (2) "a current physical or mental disability;" and (3) "a relationship between your current disability and an injury, disease or event in service." Under the section entitled "What Has Been Done to Help With your Claim?" VA informed Mr. Palor that a "request [was] sent to the Department of the Army for a verification of your service medical records. It usually takes six (6) months for them to reply." R. at 50. The letter did not contain any information regarding the requirement of establishing veteran status. R. at 48-51.

In April 2002, the NPRC responded to VA's request and reported that Mr. Palor "has no service as a member of the Philippine Commonwealth Army, including the recognized guerillas, in the service of the United States Armed Forces." R. at 75. In May 2002, the Manila, Republic of the Philippines, VA regional office (RO), denied his claims on the basis that his military service could not be verified. R. at 77. Mr. Palor appealed this decision. R. at 82. In a Statement of the Case, the RO maintained its denial of his claims after noting that "[t]he proof of service with the Armed Forces of the Philippines (whether as a guerilla or as a [member of the United States Armed Forces of the Far East] USAFFE) does not guarantee certification of service with the United States Armed Forces." R. at 101. Mr. Palor appealed to the Board and in November 2003, the decision on appeal here was issued. R. at 1-7. The Board, after noting that "service department certifications are binding in determinations regarding basic eligibility requirements," denied his claim as a matter of law. R. at 3.

The appellant makes one assertion of error on appeal. The appellant argues that the Board decision should be vacated because VA failed to comply with 38 U.S.C. § 5103(a). The appellant asserts that the RO committed prejudicial error by not informing him how he could substantiate his claim, specifically, what information or evidence was necessary to establish veteran status. The Secretary asserts that the Board decision should be affirmed because VA did attempt to verify Mr. Palor's service through NPRC and because VA is bound by the service department's response, which indicated that the appellant did not serve in the Philippine Commonwealth Army or as a recognized guerilla in the service of the USAFFE. For the following reasons, the Court will affirm the Board's decision.

## II. ANALYSIS

### A. Veteran Status and 38 U.S.C. § 5103(a) – Generally

Pursuant to 38 U.S.C. § 5103(a), once VA receives a complete or substantially complete application for benefits, the Secretary is required to inform the claimant of the information and evidence not of record (1) that is necessary to substantiate the claim; (2) that VA will seek to obtain, if any, and (3) that the claimant is expected to provide, if any. *See* 38 U.S.C. § 5103(a); *Quartuccio v. Principi*, 16 Vet.App. 183, 187 (2002). The Secretary is also required to "request that the claimant provide any evidence in the claimant's possession that pertains to the claim." 38 C.F.R. § 3.159(b)(1) (2003); *see Pelegrini v. Principi*, 18 Vet.App. 112, 121 (2004). The purpose of the notice required under statutory section 5103(a) and regulatory § 3.159(b) is to ensure that VA "provides affirmative notification to the claimant prior to the initial decision in the case as to the evidence that is needed and who shall be responsible for providing it." *Mayfield v. Nicholson*, 444 F.3d 1328, 1333 (Fed. Cir. 2006); *see Pelegrini*, 18 Vet.App. at 120 (holding that notice must be provided "*before* an initial unfavorable [adjudicative] decision on the claim"). Furthermore, "[i]f the claimant's application suggests that there is specific information or evidence necessary to resolve an issue relating to elements of a claim," VA must tailor the notice to the claimant, thus informing him of the specific evidence and information required to substantiate that element of the claim. *See Dingess v. Nicholson*, 19 Vet.App. 473, 490 (2006) (consolidated with *Hartman v. Nicholson,* No. 02-1506,

3

*aff'd in part sub nom. Hartman v. Nicholson,* No. 06-7303 (Fed. Cir. Apr. 5, 2007)), *appeal docketed, Dingess v. Nicholson*, No. 06-7247 (Fed. Cir. June 21, 2006).  This requirement extends to the essential element of the claim at issue in this case: establishing veteran status.  *Id.* at 485 (holding that establishing veteran status "is necessary to substantiate service connection, and thus, [VCAA] notice must be provided on how [that] element [] may be established").  Failure to comply with any of these requirements may constitute remandable error when such error is prejudicial to the appellant.  *Pelegrini*, 18 Vet.App. at 121-22; *Quartuccio,* 16 Vet.App. at 188.  In the event the Court finds error, it must "take due account of the rule of prejudicial error."  38 U.S.C. § 7261; *see Conway v. Principi*, 353 F.3d 1369, 1373 (Fed. Cir. 2004); *see also Sanders*, *supra*.

B.  Proof of Philippine Veteran Status

Pursuant to 38 U.S.C. § 101(2), a "veteran" is a "person who served in the active military, naval, or air service, and who is discharged therefrom under conditions other than dishonorable."  *See* 38 C.F.R. § 3.1(d)(2006).  In certain circumstances, this "service" may include service in the Commonwealth Army of the Philippines, including that service claimed by the appellant, service in the organized guerilla forces that were called into service of the U.S. Armed Forces.  *See* 38 U.S.C. § 101(2); 38 C.F.R. § 3.40.  To establish this service, the Department of Veterans Affairs has promulgated two regulations concerning the type of evidence that may be relied upon:  38 C.F.R. § 3.203, addressing generally "service records as evidence of service and character of discharge," and 38 C.F.R. § 3.41, specifically addressing establishing veteran status for Philippine service.  Regarding service records, 38 C.F.R. § 3.203 provides:

(a) *Evidence submitted by a claimant.*  For the purpose of establishing entitlement to pension, compensation, dependency and indemnity compensation or burial benefits [VA] may accept evidence of service submitted by a claimant (or sent directly to the Department of Veterans Affairs by the service department), such as a DD Form 214, Certificate of Release or Discharge from Active Duty, or original Certificate of Discharge, without verification from the appropriate service department if the evidence meets the following conditions:

(1) The evidence is a document issued by the service department.  A copy of an original document is acceptable if the copy was issued by the service department or if the copy was issued by a public custodian of records who certifies that it is a true and exact copy of the document in the custodian's custody or, if the copy was submitted by an accredited agent, attorney or service organization representative who has successfully completed VA-prescribed training on military records, and who

4

certifies that it is a true and exact copy of either an original document or of a copy issued by the service department or a public custodian of records; and

(2) The document contains needed information as to length, time and character of service; and

(3) In the opinion of [VA] the document is genuine and the information contained in it is accurate.

. . . .

(c) Verification from the service department: When the claimant does not submit evidence of service or the evidence submitted does not meet the requirements of paragraph (a) of this section (and paragraph (b) of this section in pension claims), [VA] shall request verification of service from the service department. . . .

As to Philippine claimants, § 3.41 provides:

(a) For a Regular Philippine Scout or a member of one of the regular components of the Philippine Commonwealth Army while serving with Armed Forces of United States, the period of active service will be from the date certified by the Armed Forces as the date of enlistment or date of report for active duty, whichever is later to date of release from active duty, discharge, death, or in the case of a member for the Philippine Commonwealth Army June 30, 1946, whichever was earlier. . . .

(b) Active service of a Regular Philippine Scout or a member of the Philippine Commonwealth Army serving with the Armed Forces of the United States will include a *prisoner-of-war* status immediately following a period of active duty, or a period of recognized guerilla service or unrecognized service under a recognized commissioned officer. In those cases where following release from active duty as set forth in paragraph (a) of this section, the veteran is factually found by [VA] to have been injured or killed by the Japanese because of anti-Japanese activities or his or her former service in the Armed Forces of the United States, such injury or death may be held to have been incurred in active service for [VA] purposes. Determination shall be based on all available evidence, including service department reports and consideration shall be given to the character and length of the veteran's former active service in the Armed Forces of the United States.

(c) A prisoner-of-war status based upon arrest during general zonification will not be sufficient of itself to bring a case within the definition of return to military control.

(d) The active service of members of the irregular forces *guerilla* will be the period certified by the service department.

With regard to Philippine claimants claiming service in the Philippine Commonwealth Army and attempting to establish veteran status, the Federal Circuit analyzed the relationship between

§ 3.203 and § 3.41 and held that "these regulations require that an applicant prove his service in the Philippine Commonwealth Army with *either* official documentation issued by a United States service department, *or* verification of the claimed service by such a department." *Soria v. Brown*, 118 F.3d 747, 748 (Fed. Cir. 1997) (citing § 3.9 (redesignated as § 3.41 (2001)) for the proposition that veteran status for Philippine veterans is authorized "from the date certified by the Armed Forces [of the United States], § 3.203(a) for the proposition that "service department documentation of service" **is required where available**, and § 3.203(c) for the proposition that service department verification of service **is required where documentation is not available**).  Thus, in accordance with the Federal Circuit's determination in *Soria*, Philippine claimants are not limited solely to NPRC's verification as a means of proving veteran status.  They may also submit official evidence from the U.S. service department that verifies their service.  38 C.F.R. § 3.203(a), (c); *cf. Soria*, 118 F.3d at 749.  The Federal Circuit ultimately concluded:

> Philippine veterans are not eligible for veterans' benefits unless a United States service department documents or certifies their service.
>
> Where service department certification is required, the VA has long treated the service department's decision on such matters as conclusive and binding on the VA.  Thus, if the United States service department refuses to verify the applicant's claimed service, the applicant's only recourse lies within the relevant service department, not the VA.  This court sees no error in that treatment.

*Soria*, 118 F.3d at 749 (citations omitted) (holding no error in Board decision where Board refused to consider claim for veteran's benefits because the United States Department of the Army refused to certify his service in the Philippine Commonwealth Army).  Thus, it appears that pursuant to the Federal Circuit's decision in *Soria*, VA may accept U.S. service department documents or seek certification of service, but once certification is received, VA is bound by that certification.  *Id.*

C.  Notice Requirements Following *Soria* and the Enactment of the VCAA

The Federal Circuit's decision in *Soria* predates the VCAA, and thus, the Federal Circuit did not address VA's notice obligations concerning proof of veteran status when it considered the interplay between § 3.203 and § 3.41.  In light of the Court's holding in *Dingess,* we conclude that VA was obligated to inform the appellant of the information or evidence necessary to prove the element of veteran status, what information the veteran was responsible for providing, and what information VA would seek to obtain concerning that element.  *See Dingess*, 19 Vet.App. at 485;

*see also Locklear v. Nicholson*, 20 Vet.App. 410, 416 (2006) (noting that section 5103(a) does not require a "pre-decisional decision" on the evidence, but it does require that "some cognitive review of the claim must be made prior to providing the notice and that a generalized or boilerplate notice letter might not suffice in some cases"). Since veteran status is frequently a dispositive issue in claims filed by Philippine claimants, some tailoring of VCAA notice concerning proof of veteran status is necessary in most, if not all, cases.[1] Given that the issue of whether VCAA-compliant notice was provided is a "substantially factual determination . . . that should . . . [be] made by [VA] in the first instance," the Court will now address whether the Board's decision in this regard was clearly erroneous. *See Mayfield*, 444 F.3d at 1333-34.

### D. Compliance with 38 U.S.C. § 5103(a)

In this case, the Board addressed both § 3.41 and § 3.203(c) and determined, based on the appellant's service in the guerilla forces, that "VA may accept evidence of service . . without verification from the appropriate service department if the evidence meets the following conditions: (1) [T]he evidence is a document issued by the service department **and**, (2) the document contains needed information as to length, time, and character of service, **and** (3) in the opinion of VA, the document is genuine and the information contained in it is accurate." R. at 4. The Board then determined that the documents and affidavits submitted by the appellant in support of his claim did not meet the requirements of 38 C.F.R. §3.203, "as none [were] issued by the service department." R. at 6. The Board noted that it had relied on the same reasoning provided by the RO in the Statement of the Case, that because "[NPRC] had certified that [the appellant] had no recognized military service and that this determination [is] binding on VA . . . this claim is being denied as a matter of law." *Id.*

The question remains, however, whether the notice provided to the appellant pursuant to 38 U.S.C. § 5103(a) was properly tailored, adequately informing the appellant of his opportunity

---

[1] The Court notes that in regard to a separate application for benefits, and prior to the enactment of the VCAA, VA did in fact inform the appellant that establishing veteran status was at issue in his attempt to establish entitlement to VA benefits. That notice, dated June 2000, informed the appellant that he needed to submit "a military discharge certificate or other acceptable evidence of military service on which your claim is based. You may request proof of service from the Philippine Veterans Affairs Office or at the Noncurrent Records Branch, Office of the Adjutant General, GHQ, in Camp Aguinaldo, Quezon City." R. at 17.

to submit evidence pursuant to § 3.203 to establish veteran status, and if not, whether such error was prejudicial. Although the Board recognized the existence of the requirements of both § 3.203 and § 3.41, it did not specifically discuss whether the RO provided the appellant notice of the opportunity to submit official U.S. documentation of service as evidence, permitted by *Soria*, to establish veteran status. Rather, the Board, in addressing VA's compliance with 38 U.S.C. § 5103(a) and 38 C.F.R. § 3.159(b), determined that "the appellant was notified of the evidence necessary to substantiate his claim by correspondence dated in October 2001 (prior to adjudication)." R. at 3. This finding is clearly erroneous. *See Mayfield*, 444 F.3d at 1333-34.

The October 2001 letter did not provide the appellant notice of the information and evidence necessary to substantiate his claim, nor did it inform him of any information or evidence concerning veteran status that VA would seek to obtain on his behalf, nor of any evidence and information that he was expected to provide. The October 2001 letter informed the appellant only that VA had requested verification of his "**service medical records**" from the Department of the Army. The letter did not inform him of the requirements of 38 C.F.R. § 3.203(a)(c), or § 3.41, that is, that he could have submitted evidence, in the form of U.S. service documentation, supporting his veteran status, nor did it inform him that the U.S. service department certifications that Philippine service either qualifies or does not qualify him for veteran status may be binding on his claim. Although VA had received the appellant's letters from the Republic of the Philippines Department of National Defense Military Service Board, Department of National Defense Philippine Veterans Affairs Office, and affidavits from his friends describing their military experiences together, and thus clearly was aware that veteran status would be an issue in his claim, the October 2001 letter did not provide him with information as to what documents, if any, he could submit that would constitute acceptable evidence of qualifying military service. As a result, the notice provided to the appellant failed to satisfy all of the requirements set forth in 38 U.S.C. § 5103(a) and 38 C.F.R. § 3.159(b). Having found error with the Board's determination, the Court must presume that these errors were prejudicial to the appellant, unless VA "persuades the Court that the purpose of the notice was not frustrated, e.g., by demonstrating that(1) any defect was cured by actual knowledge on the part of the claimant, (2) that a reasonable person could be expected to understand from the notice what was needed, or (3) that a benefit could not have been awarded as a matter of law." 38 U.S.C. §

7261(b)(2); *see Sanders*, __ F.3d at __, slip op. at 14, 2007 WL 1427720, at *7; *Conway v. Principi*, 353 F.3d 1369, 1374-75 (Fed. Cir. 2004).

### E.  Prejudicial Error

The Federal Circuit's decision in *Soria* recognizes that service department certifications that Philippine service either qualifies or does not qualify the claimant for veteran status are conclusive and binding on VA.  Therefore, in assessing whether the appellant was prejudiced by VA's failure to notify him of the various methods available for proving Philippine veteran status, the Court can conclude only that because the appellant is currently ineligible for VA benefits as a matter of law based on the NPRC's refusal to certify the appellant's service, he was not prejudiced by the section 5103(a) notice error.  *See Sanders,* __ F.3d at __, slip op. at 14, 2007 WL 1427720, at *7 (holding that the purpose of section 5103(a) notice is not frustrated, and thus, the claimant is not prejudiced, when the benefit sought cannot be awarded as a matter of law); *Valiao v. Principi*, 17 Vet.App. 229, 232 (2003) (determining that VCAA notice error was nonprejudicial where appellant was not entitled to benefit as a matter of law).  This is so because based on the U.S. service department's refusal to certify, there are presumably no documents issued by the U.S. service department that the appellant could submit to VA that would show qualifying service under §3.203.  Furthermore, there is no indication that additional evidence that meets the requirements of 38 C.F.R. § 3.203, documentation of service from a U.S. service department, exists, or that the information submitted by VA to the service department for purposes of certifying his service was erroneous or incomplete. *See Canlas v. Nicholson*, __ Vet.App. __, __, No. 04-1769, slip op. at 6, 2007 WL 1742871, at *5 (June 15, 2007) (holding, in regard to certifying Philippine service, that the duty to assist requires VA to "obtain records relevant to the adjudication for a claim" where the qualifying service is in doubt and "the claimant adequately identifies such records to the Secretary); *see also Sarmiento v. Brown*, 7 Vet.App. 80, 86 (1994)(remanding where veteran asserted that VA sought certification of his service with erroneous spelling of his first name), *overruled on other grounds by D'Amico v. West*, 209 F.3d 1322, 1327 (Fed. Cir. 2000); Appellant's Brief at 13-14 (recognizing that different identification data could prompt VA to seek recertification, but failing to identify that the information submitted for the certification request was erroneous).  Thus, given the binding nature of the U.S. service department's certification in this instance, a remand for further development could not possibly change the outcome of the decision.  *See Valiao*, 17 Vet.App. at 232.

The appellant's only remaining recourse, as noted by the Federal Circuit in *Soria*, *supra*, is to submit any documentation of qualifying U.S. service he may possess to the appropriate service department for certification of his service. 118 F.3d at 749; *see Canlas*, *supra* (recognizing that VA is bound by U.S. service department certification, if that certification is based on adequate and correct information). If his service eventually is certified, the appellant may seek to reopen his claim for service connection based on his submission of new and material evidence – the service department's certification. *See* 38 U.S.C. § 5108; 38 C.F.R. § 3.156(c) (2006)[2]. Thus, although VA should have informed the appellant that veteran status could be substantiated in either of the two ways specified in VA regulations, because the service department has refused certification, such error does not warrant a remand. *See Sanders,* __ F.3d at __, slip op. at 14, 2007 WL 1427720, at *7; *Valiao*, 17 Vet.App. at 232.

### III. CONCLUSION

Based on the foregoing analysis, the appellant's and the Secretary's briefs, and a review of the record on appeal, the Board's November 24, 2003, decision is AFFIRMED.

KASOLD, *Judge*, concurring in judgment: Pursuant to regulation, the "active service of members of the irregular force *guerilla* will be the period *certified* by the service department." 38 C.F.R. § 3.41(d) (2006) (latter emphasis added). Thus, when Mr. Palor submitted his application for VA benefits and asserted that he had recognized guerrilla service in the Republic of the Philippines from January 1942 to November 1943 and provided documentation supporting his assertion,[3] the Secretary had sufficient information to seek certification of the reported service from

---

[2] This provision allows for the assignment of an effective date on the date VA received the previously decided claim in cases in which VA reconsiders that claim because it "receive[d] or associate[d] with the claims file relevant official service department records that existed and had not been associated with the claims file when VA first decided the claim." 38 C.F.R. § 3.156(c).

[3] In support of his assertion, Mr. Palor submitted with his application for VA benefits affidavits from the Republic of Philippines Department of National Defense Military Service Board, Department of National Defense Philippine Veterans Affairs Office, and friends regarding his military service and asserting that he had recognized guerrilla service in the Republic of the Philippines.

the NPRC.[4] In response thereto, the NPRC reported that Mr. Palor "has no service as a member of the Philippine Commonwealth Army, including the recognized guerillas, in the service of the United States Armed Forces." R. at 75. Thereafter, the Secretary properly denied Mr. Palor's claim. *See Soria*, 118 F.3d at 749 ("Where service department certification is required, . . . the VA has long treated the service department's decision on such matters as conclusive and binding on the VA. . . . This court sees no error in that treatment.").

Although section 5103(a) requires the Secretary to notify a claimant of the information and evidence necessary to substantiate a claim, it should not be read to require "pointless expenditures of effort". *See Ala. Power Co. v. Costle*, 636 F.2d 323, 360 (D.C. Cir. 1980) (stating the obvious proposition that courts should be reluctant to interpret the terms of a statute "to mandate pointless expenditures of effort"). When the information necessary to seek certification of service from NPRC is provided with the application for VA benefits – and given the fact that the law is dispositive and mandates denial of a claim when that service is not so certified, *see Mason v. Principi*, 16 Vet.App. 129, 132 (2002) ("[B]ecause the law as mandated by statute, and not the evidence, is dispositive of this claim, the VCAA is not applicable."); *Sabonis v. Brown,* 6 Vet.App. 426, 430 (1994) (where law, and not evidence, is dispositive, claim should be denied or appeal terminated because of lack of legal merit) – there is no basis for finding error in the Secretary's decision to seek such certification prior to advising a claimant of the information and evidence necessary to substantiate the claim. Providing such notice serves the sole function of frustrating the claimant and sending him on a wild goose chase, searching for evidence of an incident in service, current disability, and nexus, when entitlement to benefits fails as a matter of law for lack of veteran status. *See Collaro v. West*, 136 F.3d 1304, 1308 (Fed. Cir. 1998) (claim for disability compensation benefits has five elements:

---

[4] Mr. Palor has not asserted, and the record does not reflect, that there was any error in the information forwarded by the Secretary to the service department and upon which certification was sought and provided. *See Sarmiento v. Brown*, 7 Vet.App. 80, 86 (1994) (remanding where veteran asserted that VA sought certification of his service with erroneous spelling of his first name), *overruled on other grounds by D'Amico v. West*, 209 F.3d 1322, 1327 (Fed. Cir. 2000); *Coker v. Nicholson*, 19 Vet.App. 439, 442 (2006) (burden on appellant to plead with some particularity the allegation of error).

(1) veteran status, (2) existence of a disability, (3) a connection between the veteran's service and the disability, (4) degree of disability, and (5) effective date of the disability).

Accordingly, I concur in the judgment of the Court, but respectfully dissent from its finding of notice error in this case.